IRVING COHEN *vs.* BEST MADE MANUFACTURING CO.

MARCH 24, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

FROST, J.   This is an original petition filed with the workmen's compensation commission on February 10, 1959 under G. L. 1956, §28-35-12, wherein the petitioner alleges that on December 10, 1957 he bumped into a stationary dress rack striking his head and jarring his neck.   The petition was heard by a single commissioner, who entered a decree denying and dismissing the petition.   On appeal to the full commission a decree was entered affirming the decree of the single commissioner.   From this last decree an appeal was taken to this court.

It appears that at the time of the alleged accident the respondent was a corporation engaged in the manufacture of women's garments in the town of Warren.   The petitioner was the sole stockholder and was president as well as manager of the corporation.   His duties required him to be concerned with production and also with sales and he made contacts outside and solicited business.   His salary was $300 a week.

On December 10, 1957 petitioner was standing in the cleaning and finishing department when someone called to him.   He testified that: "I turned around in sort of a very fast walk, not realizing I was near this rack and I walked right into it and jolted my head back.   I was stunned momentarily and sort of blacked out."   There were in this room galvanized pipes attached on the ends to pillars of the building.   These pipes were about as high as a man's head and were used for hanging garments.   The impact jolted him and threw his head back, but it did not cause him to fall to the floor.   He walked into the office, took a bufferin and sat down.

Five days after the accident he went to Florida, where he remained for two weeks.

He first saw a doctor on January 10, 1958, when he went to Dr. Morten Smith-Petersen of Boston, Massachusetts, because he was having constant pain in his neck. On February 4 he went to Dr. William Kenney, an orthopedic surgeon in Fall River, who gave him traction and diathermy treatment at his home which lasted about five hours and were taken every day for about a year.

On May 1, 1958 his brother took over the business as petitioner was unable to continue any longer, and in August 1958 he moved to Miami, Florida. Doctor Stephen H. Glucroft of Miami Beach gave him traction treatment in his office and he took heat treatments in his home about three times a day. In addition to the treatments he wore a collar for about a year up to February 1, 1959.

The only witness, other than petitioner, was Dr. Kenney who saw him on February 14, 1958 and on examination found the neck motions limited with tenderness in both sides of his neck. His diagnosis was radiculitis. Doctor Kenney saw petitioner again on February 25 and after that from time to time up to July 31, 1958. He prescribed a cervical collar which was worn from June 13 to July 3. In answer to a question whether petitioner gave him any history of an injury he replied: "He said that he had repeatedly bumped his head on metal racks and jerked his head backwards", that this answer was the extent of the history; and that it was given to him for the first time on May 10, 1958.

Doctor Kenney testified further that he first saw petitioner in November 1954 at which time he complained of pain in the left hip and back; that he saw him in January 1955 and in January 1956 when he complained about his neck; and in February 1957 when his complaints were the same as in 1956 except that his condition was worse. His

general symptomatology was the complaint of pain and stiffness of the neck.

In addition to the testimony already referred to there were several written reports from doctors who had attended petitioner. A report signed by Dr. Smith-Petersen gives the date of his first treatment as January 28, 1958. Item 4 in the report reads: "Employe's statement of cause of injury or illness: gradual onset while at work of pain, neck and shoulders." Item 5 reads: "Is there any history or evidence present, of pre-existing injury or disease, and if so, what? treated for similar episode in June 1956. Degenerative arthritis of cervical spine."

A report from Dr. Henry H. Banks of Peter Bent Brigham Hospital, Boston, Massachusetts, states that petitioner was perfectly well until early in December 1957 when he struck his head on a stationary rack in his factory and sustained a sudden jolt to his cervical spine. The report also states that in 1948 petitioner had an excision of a lumbosacral disc and that he apparently has a cervical radiculitis related to a whiplash injury of his cervical spine.

A report from Dr. Glucroft, who saw petitioner at his office many times from August 22, 1958 to January 5, 1959, diagnosed petitioner's injury as "compressive cervical radiculitis, left."

The decree of the single commissioner denying and dismissing the petition contains the following findings:

"1. That the petitioner has failed to prove by a fair preponderance of the testimony that on or about December 10, 1957, he suffered injuries to his back and neck as a result of striking his head on a clothes rack.

"2. That the petitioner has failed to prove by a fair preponderance of the testimony that he is an 'employee' within the meaning of the provisions of the Workmen's Compensation Act.

"3. That the petitioner has failed to prove by a fair preponderance of the testimony that his incapacity for work for the period he claimed was the result of inju-

ries he sustained while working as an 'employee' for the respondent."

The petitioner has stated seven reasons why his appeal to this court should be sustained. These reasons raise two questions, the answers to which are determinative of petitioner's rights under his petition. They are: (a) Was petitioner an employee at the time of his alleged injury? (b) Did petitioner receive an injury as stated and described in his petition?

Was petitioner an employee of respondent? In *Sormanti v. Marsor Jewelry Co.,* 83 R. I. 438, 441, after referring to the definition of the word "employee" in the workmen's compensation statute, we stated, "In the absence of a more specific definition, resort must necessarily be had to the common-law rules of master and servant according to which, broadly speaking, the status of a person as an employee depends upon whether the employer has or has not retained power of control or superintendence over him. The final test is the right of the employer to exercise power of control rather than the actual exercise of such power. *Henry v. Mondillo,* 49 R. I. 261, 264." Using that test, that is, the right to exercise the power of control, petitioner was clearly not an employee since he owned all of the stock of the corporation, was president and manager, and in fact occupied all of the offices with the exception of one held by his wife the name of which he could not recall. There were about 75 employees. There was no one to control petitioner's actions and, as he himself testified, he had "the big say."

When the workmen's compensation act was passed, P. L. 1912, chap. 831, it did not apply to an employee whose remuneration exceeded $1,800 a year. At the present time the amount of remuneration is not a decisive factor in determining who is an employee.

The petitioner has cited cases to show that, notwithstanding the amount of his compensation and his ownership of all the stock of the corporation, he was nevertheless an

employee since the respondent corporation was a separate entity.

In *Dewey* v. *Dewey Fuel Co.,* 210 Mich. 370, it appeared that Mrs. Dewey sought compensation for the accidental death of her husband on the ground that he was an employee of defendant corporation. He was a stockholder in and president of the defendant fuel company and served as president without salary. Since he was unfitted for executive work he accepted a place in the yard at $2 a day and was carried on the payroll as an employee. He was called a yardman. Just prior to the accident he was ordered by the manager to go to another part of the city to measure some wood and get it ready for the drivers. On the way he was knocked down and suffered injuries from which he died. The court held that the company was a legal entity; that Dewey was employed by the manager of a legal entity; and that he was employed by another within the meaning of the act.

In the instant case petitioner was the manager and was not directed in his work by anybody but himself. He was not under the control of anybody.

In *Milwaukee Toy Co.* v. *Industrial Comm'n,* 203 Wis. 493, it appeared that Richard Bayer was accidentally killed in the petitioner's place of business when he fell down an elevator shaft while going about the building and giving directions concerning items of merchandise. The Milwaukee Toy Company appears to have been a family corporation of which Bayer owned 310 shares out of a total of 352 shares. He was president and treasurer, had a salary which varied from $4,000 to $6,000, and was appointed general manager of the corporation although the articles of incorporation did not provide for the office of general manager. The secretary took considerable part in the affairs of the company and consulted with Bayer about its business matters and policies. The court held, "The resolution of the board of directors appointing Bayer general manager, fol-

lowed by his acting in that capacity, in our opinion created a contract to hire and brought him within the protection of the act." Bayer was held to be an employee.

In the case before us petitioner entered into no contract of service so far as is revealed by the evidence.

*Emery's Case*, 271 Mass. 46, was a compensation case wherein it appeared that the claimant was a stockholder and treasurer of a corporation and was injured while engaged in the manual and mechanical operation of a machine. She was included within the terms of the policy of insurance carried by the corporation employer. She was carried on the books as a workman and received a weekly wage of $30. The policy of insurance provided that it should apply to injuries sustained by the president, vice-president, secretary or treasurer. The court held that she was an employee.

We do not question that from the evidence in the instant case the respondent was a legal entity but the evidence does not disclose that its records show that the petitioner was a workman, nor is there evidence that he was included in the policy of liability insurance, nor is there any evidence of a contract of service with the corporation.

We are of the opinion that from the evidence before it the commission could properly find that there was no one who could exercise control over the petitioner, and that in all the circumstances he was not an employee and so did not come within the provisions of the workmen's compensation act. Having reached that conclusion we find it unnecessary to consider whether he sustained an accident.

The appeal is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the the workmen's compensation commission for further proceedings.

*Joseph Ortoleva*, for petitioner.

*Boss, Conlan, Keenan, Bulman & Rice, John F. Dolan*, for respondent.